reason of taking charge of the Huntress, and of his meritorious personal services in bringing her, with her cargo and crew, to this port. 3. The remaining two-thirds to Captain John Adams, and the officers and crews of the Gladiator and Jackall, including herein Lieut. Robson, to be distributed according to the regulations and usages of H. B. M.'s naval service. And I direct that the said two-thirds do remain in the registry of this court, until letters of procuration shall be exhibited in due form of law to receive the same, or until further order. And I further decree that the remaining three-fourths of the value of the brig Huntress and her cargo be charged with the taxable costs of this case, and that the residue thereof be paid to the claimant, John R. Rue. Decree accordingly.

## Case No. 6,913.

### The HUNTRESS.

[2 Spr. 61.] [1]

District Court, D. Massachusetts. Feb., 1863.

COLLISION—ORDERS BY OFFICERS OF INJURED VESSEL.

Where a collision occurred in consequence of the third mate of one of the vessels obeying a direction given at the time by the master of the other vessel, held, that the owners of the latter vessel could not sustain a claim for damages.

This was a libel against the bark Huntress, for damages occasioned by a collision with the bark Roscius owned by the libellant and others. The libel alleged that the collision occurred by the carelessness and mismanagement of the Huntress, and through no fault of the Roscius. The answer denied that the Huntress was in fault, but contended that the accident was occasioned by the mismanagement of the Roscius, and especially by reason of an order given by the master of the Roscius to the officer in charge of the deck of the Huntress, and which was obeyed by the Huntress.

R. C. Pitman, for libellant.
W. W. Crapo, for respondents.

SPRAGUE, District Judge. While I have no doubts about the law governing this case, I have had a good deal of difficulty as to the facts. The evidence is very contradictory as to these, and is still more so in respect to matters of opinion and inference. This is not extraordinary, for the evidence necessarily comes from the two vessels, and for that reason is naturally conflicting, and often extremely difficult to reconcile.

1 [Reported by John Lathrop, Esq., and here reprinted by permission.]

There are, however, in this case some facts about which there is no controversy. The collision occurred on whaling ground off the Rio de la Plata; it was in the night about ten or half past ten o'clock; the Roscius was on the port tack and the Huntress on the starboard tack. How close-hauled they were, only appears by the statement of both, that they were close-hauled. If a vessel is making a passage, where time is of consequence, the helmsman is more careful than in the case of whale-ships on cruising grounds. Merchant ships would be more careful about courses than whale-ships.

The officers of both ships were for the most part below. This is usual in the whaling service. In this case both vessels had officers on deck higher than boat-steerers. That the third mate of the Huntress, who had charge of the deck, was not competent, is an inference from the events only; and it appears by the direct testimony, that he was competent, and his competency can be inferred from his position. I think no fault attaches to either vessel from the incompetency of the officers in charge, or from the other officers of either vessel not being on deck at the time. It was not a case of inevitable accident, and the decision must rest on the management of the two vessels. The vessels were not running a race; there was no sort of importance which vessel went ahead or behind; there were no advantages to be derived from positions, as in the case of vessels making passages; there was light enough to see, and the vessels were seen. The collision then must have occurred by mismanagement.

In what did that mismanagement consist? It is contended by the libellant, that the Huntress being on the starboard tack did not keep her course. That is the allegation. On the other hand, the Huntress contends that she was keeping her course, but that an order was given by Captain Howland of the Roscius, which was obeyed by the Huntress, and that obeying this order, and the mismanagement of the Roscius, caused the collision. To this it is replied by the Roscius, that if such was the cause of the collision, the third mate of the Huntress had no right to obey it, but should have followed his own judgment.

I do not think that, if Captain Howland of the Roscius gave a wrong order and it was obeyed, he can say that it should not have been obeyed. The giving of the order was an assurance by Captain Howland to an inferior officer that if his directions were followed, there would be no collision. The owners are responsible for the acts of their master. Therefore, if it shall appear that obeying the order of Captain Howland caused the collision, my opinion is the libellants cannot recover. Let us look at the question of facts. There can be no doubt that the order was given, as it is admitted by the master, that he directed the Hun-

tress to put her helm hard down. Was it obeyed? The evidence is contradictory. Every witness of the Roscius says, the Huntress put away before wind and ran into the Roscius, head on. On the other hand, every witness of the Huntress says the Huntress did not put away, but put down her helm and backed .her maintopsail, that she then came into the wind, then fell off, lost her headway, and, before gaining it, came in contact with the Roscius. Every witness of the Roscius says the Roscius had her helm put up to avoid collision, her fore-topsail aback and her maintopsail shivered, and that the Huntress bore right down to them,—that she must have put up her helm.

Now the court must form an opinion in this case from facts about which there is no controversy. The collision was practicable from either course. The experts make it obvious that the collision might occur in the manner stated by the Huntress, and we know it might occur in the manner stated by the Roscius. In deciding between these two ways, let us look at the mode in which these vessels came together.

We find from the evidence of both parties, that the bow of the Huntress just came in contact with the Roscius' flying jib-boom guy, and then the vessels separated. Then the Huntress struck the cat-head of the Roscius, and they separated again, and next the Huntress struck the forerigging of the Roscius, and swept along, taking away boats, davits, rail, &c., until the Huntress' anchor caught in the Roscius' rigging, holding the two vessels together.

With what force did the Huntress first strike the Roscius? This is important. Both vessels were under short sail. The Huntress had doubled reefed maintopsail, foresail, and foretopmast-staysail. The wind was a good whole-sail breeze. Now, if the theory of the Roscius is correct, the Huntress being on the starboard tack with these sails and the wind, if she had fallen off before the wind, her headway would not have been deadened. Then she must have come into the other vessel with much concussion, and the first contact must have been the heaviest. But, by the evidence, there was no shock at all. There was the mere parting of a guy. The protest confirms this. What next? Captain Howland says his vessel was next struck on the cat-head. But the cat-head was not injured. Hence the blow could not have been severe. The third time there was more damage,—the boats were injured, and the studding-sail booms and the forerigging; according to the evidence, the blow broke the ratlings, which does not indicate a very heavy shock. Now the vessels swung side by side. As the Roscius forged ahead, the Huntress, although she had no headway, would be brought down by the stern of the Roscius, until her anchor caught in the Roscius' rigging, thereby holding the vessels together.

How extensive was the damage from this contact? There was no cutting down the Roscius, as might have been supposed from a vessel of the size of the Huntress if coming before the wind; but, on the contrary, they came in contact as though thrown together by the motion of the waves. There is nothing in the collision which indicates the momentum of a vessel propelled by sails.

Was the Roscius under sail? On this point there is some doubt. Taking the testimony of Captain Howland, I think the headway of the Roscius was stopped in a great degree by shivering her mainsail and hauling her headyard aback; but afterwards, bracing forward the headyards, she would get headway, although slow. The Roscius was in motion. If either vessel had headway, it was the Roscius, and, when the Huntress came down drifting towards her, the Roscius may be said to have run into her,—a very gentle motion, and which produced no very great shock.

The opinions of the witnesses of the Roscius, who say that the Huntress was coming down with such violence that they expected the Roscius would be cut down, is not borne out by the event. They mistook the motion of their vessel for that of the Huntress. They simply mean that the two vessels were approaching each other. This erroneous impression is quite natural, considering the darkness of the night. It is very probable all they saw was the light of the Huntress, as the protest states it was a very dark night.

But more than this. In the protest made at St. Helena in 1860 a short time after the accident, it is stated that the Huntress came down and struck the Roscius between the main and fore rigging; but no mention is made of her striking twice before this as is shown by the evidence, showing conclusively that they did not regard the striking of the guy, and then the cat-head, as of much consequence.

I am of opinion, that the Huntress did not come in contact by putting up her helm, but that the collision was produced as contended in the answer, that the order was given and obeyed, and in consequence of it she managed as described by the Huntress' witnesses and experts.

Upon the whole, I am of the opinion that the Huntress was not in fault, and that there would have been no collision but for the order of Captain Howland. The question is involved in difficulties. I have given it great study, but further evidence might show me to be in error.

It has been suggested that the third mate of the Huntress should have called Captain Allen, but suppose he had done so. I do not see how that would have helped it, as the Roscius cannot make the Huntress pay for an injury caused by themselves. Besides this, it is possible that the helmsman

of the Roscius might have made a mistake, and put his helm down instead of up, when he supposed the vessels had passed. The helmsman was not called. Mr. Hunnewell, the mate of the Roscius, says the helm was up; but he could not have known this, he simply believes it to be so. In this case there is a difficulty to be solved, and I select that solution which is the least improbable. The libel is to be dismissed with costs.